UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**JOANNE J. CALCAGNO**,

Plaintiff,

v.

**COMMISSIONER,** Social Security Administration,

Defendant.

Civil Case No. 3:12-CV-02090-KI

OPINION AND ORDER

      Karen Stolzberg
      11830 SW Kerr Parkway, #315
      Lake Oswego, Oregon  97035

           Attorney for Plaintiff

      S. Amanda Marshall
      United States Attorney
      District of Oregon

Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97201-2902

John C. Lamont
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington  98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Joanne J. Calcagno brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for supplemental security income benefits ("SSI").

I reverse the decision of the Commissioner and remand for further proceedings.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the Administrative Law Judge ("ALJ"). The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the

Page 3 - OPINION AND ORDER

claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, the ALJ makes a finding of "not disabled" and disability benefits are denied.  20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is unable to perform other work.  20 C.F.R. §§ 404.1520(f), 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance.  Id. (internal quotation omitted).  The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations.  Id.

## THE ALJ'S DECISION

The ALJ found Calcagno had severe impairments of depression, anxiety, a cognitive disorder, chronic back pain, osteoarthritis, and polysubstance abuse in remission.  The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P,

Page 4 - OPINION AND ORDER

Appendix 1.  After reviewing the evidence, the ALJ found Calcagno had the residual functional capacity to perform light work except she is restricted to simple, routine, repetitive work requiring only occasional interaction with the general public.  Based on vocational expert testimony, the ALJ found Calcagno could return to her past work as a housekeeper, and thus, was not disabled under the Act.

**FACTS**

Calcagno, who was 55 at the time of the ALJ's decision, alleges she became disabled on July 21, 2007 due to back pain, cognitive issues, depression, and anxiety.  She has a high school education and a two-year college degree in fishery technology, but no work experience in that field.  Calcagno has worked as a housekeeper and an industrial cleaner.

In July 2007, Calcagno was assaulted and believes she was also raped.  Her mother found her unconscious on the floor of the trailer where Calcagno lived at the time; she had multiple physical injuries and was hospitalized for ten days.  Calcagno has lived with her mother ever since.

Calcagno has a history of drug abuse and alcoholism but stopped drinking and using street drugs in 2001.  She has suffered occasional alcohol relapses since, including during the weeks just prior to the 2007 assault.

Calcagno complains of back pain that is severe enough to keep her in bed about seven days a month, neck pain, and severe headaches three days a week.  Mentally, Calcagno has trouble concentrating, finishing thoughts, finding words, and remembering what she has read.  She suffers from anxiety resulting in three panic attacks a week, she is irritable, and she feels

severely depressed about half the time.  The depression causes Calcagno to remain in her room to cry and sleep.

Calcagno claims all of her symptoms worsened after the 2007 assault.

Psychologist Dr. Donna Wicher performed a comprehensive psychodiagnostic evaluation on Calcagno on October 20, 2007, about three months after the assault.  Dr. Wicher reviewed Calcagno's hospitalization records from the assault, and conducted a clinical interview but did not administer any formalized testing.  She diagnosed Calcagno with Major Depressive Disorder, recurrent, mild; Anxiety Disorder not otherwise specified; Alcohol Abuse, presently in remission; and Cognitive Disorder not otherwise specified.  Dr. Wicher also noted that neuropsychological testing could be performed to identify the presence and degree of more specific cognitive deficits.  She concluded that Calcagno's mild deficits in her ability to perform activities of daily living, moderate deficits in social functioning, and mild to moderate deficits in concentration, persistence, and pace represent the primary psychological barriers to returning Calcagno to full-time employment.

On April 2, 2009, Calcagno's treating physician since 2003, Dr. Bower, concluded Calcagno was medically unable to work due to short-term memory loss, recurrent panic attacks, and related symptoms.  Dr. Bower provided a more detailed letter on October 16, 2009, in which he stated in part:

> JoAnn suffered significant emotional and physical trauma after a rape incidence [sic] in July 2007.  At that time she was hospitalized for hyponatremia, encephalopathy, aspiration pneumonia, multiple facial ecchymosis and nasal bone fracture.  Since that event the patient's had multiple medical problems related to the trauma.  These include but not limited to increased anxiety, depression, diffuse muscle skeletal pain, chronic sinus issues, slowed thought process with short term memory loss, increased urinary incontinence and pain on intercourse.

Page 6 - OPINION AND ORDER

> . . . .
>
> The patient continues to suffer from chronic pain, fatigue and depression secondary to her posttraumatic stress-type syndrome, sinus congestion and short term memory loss. It would be very difficult for her to maintain any work schedule because of episodic worsening and unpredictability of her condition and memory loss.
>
> She would be unavailable for employment multiple days per month secondary to her physical complaints. It would take a special employer to accommodate her multiple absences.
>
> It is my medical opinion that the patient is currently and for the future medically disabled. I would date the disability starting from the date of her hospital admission for the trauma 07/21/2007.

Tr. 577.

In September 2009, two friends of Calcagno provided letters containing lay testimony.

Stevie Hoggans, an addiction counselor and Qualified Mental Health Professional, has known Calcagno for 15 years. In the past seven years, Hoggans has observed Calcagno's memory greatly diminish, her ability to fluently process thoughts or demonstrate articulate speech patterns consistently deteriorate, and her excruciating back pain limit her mobility. Hoggans has observed symptoms of Calcagno's depression and anxiety. Since the 2007 assault, Hoggans has observed a decrease in Hoggans' ability to remain focused on a task or finish a thought.

Deborah Borgstrom described her observations of Calcagno during the prior five years. Before the 2007 assault, Borgstrom observed Calcagno have severe panic attacks, be unable to get up and move around because of severe back and neck pain, and refuse to come out of her bedroom because of depression. The assault caused Calcagno to "dive down" mentally and

physically, and caused additional stuttering, memory loss and the appearance of being mentally challenged.  Tr. 574.

## DISCUSSION

Calcagno argues the ALJ erred in failing to fully credit her subjective system testimony, the lay testimony of her friends, Stevie Hoggans and Deborah Borgstrom, and the opinion of her treating physician, Dr. Bower.  The Commissioner argues the ALJ did not err because Calcagno's treatment records are inconsistent with the limitations she endorses and reflect only intermittent, conservative treatment.

The ALJ cited the "relatively weak medical evidence" as one of the reasons to reject Calcagno's credibility and the two lay statements available to him.  Tr. 54, 55.  The ALJ rejected the opinion of Calcagno's treating physician, Dr. Bower, in part because the opinion was not supported by medically acceptable clinical or laboratory techniques.

Some evidence was sent to the Appeals Council but was not available to the ALJ.  Donna Harmon, Calcagno's mother, provided a letter stating that since the 2007 assault, Calcagno has been more depressed and anxious, has more trouble finding words, drifts from one thing to another, and cannot get anything done, including focusing enough to read a book.  Calcagno spends between ten and fourteen days each month in bed with her bedroom door shut.  On those days, she only comes out to use the bathroom, let her dog out, or get a sandwich, for a total of an hour a day.  If Calcagno's mother tries to talk to her on those days, Calcagno is grouchy and asks to be left alone.

Dr. Bower provided another opinion letter dated May 19, 2010.  He explains that Calcagno's depression, anxiety, and posttraumatic stress disorder "pervade[] her medical picture

Page 8 - OPINION AND ORDER

and influence[] her experience of pain. She has a high level of emotional overlay/somatization."

Tr. 687. He agrees with Dr. Wicher's psychological diagnosis and believes complete neuropsychological testing of Calcagno should be done. Dr. Bower cannot order the tests because Calcagno's insurance does not cover them. He explains:

> I have observed episodes of short term memory loss, difficulty remaining focused on conversations, tangentiality, and word finding difficulties. Ms. Calcagno's most prominent psychological symptom is her anxiety, which pervades her existence. All of her emotional issues, except her alcohol abuse, were exacerbated by the assault. When she becomes especially anxious, she cannot remember words or think clearly. . . .
>
> There have been dramatic changes in Ms. Calcagno since the assault and hospitalization in July 2007. Though she was always somewhat anxious, it has become one of her most prominent features. She now has a great deal of pain. We have recently taken X rays that demonstrate multi-level osteoarthritis throughout her lumbar and cervical spine. In addition, however, there is a component of somatization that contributes to her perception of her pain.
>
> Though Ms. Calcagno is able to engage in some household activities, she is very limited. It might be tempting to think that she is more functional than she really is. Since the assault, she has no close friends, avoids many interpersonal interactions, though she does get out on occasion, and is overall quite socially isolated. She would not be unable to cope with close supervision, production demands, interaction with the general public, or even with interactions with co-workers on a routine basis without an increase in her stress/symptoms.
>
> . . . I cannot imagine her being able to sustain any sort of work. She is constantly struggling with depression, anxiety, pain and cognitive losses. She would not be reliable either in terms of her work product or her attendance if she were in the work force.

Tr. 687-88.

The Appeals Council also received the imaging report Dr. Bower mentioned.

Four times during the hearing, the ALJ mentioned he intended to send Calcagno for a neuropsychological evaluation including testing. Tr. 81, 83, 87. The ALJ then referred to

Dr. Wicher's October 2007 evaluation, which did not include testing, and stated that he might rely on that instead after he studies her report carefully. Tr. 88. Apparently, the ALJ concluded further testing was not necessary.

The ALJ's conclusion was in error. A Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted). Both Dr. Wicher and Dr. Bower believe neuropsychological testing is needed to determine the extent of the cognitive difficulties. I see no way the ALJ could have stated the need for testing, but decided against it after studying Dr. Wicher's opinion which explained the need for testing. The ALJ failed to explain his reasoning for not ordering further tests.

I am also concerned that the X-rays which show osteoarthritis in the cervical and lumbar spine, characterized by Dr. Bower as moderate to advanced in some areas, were not available until after the hearing. The ALJ stated that evidence supporting Calcagno's alleged physical impairments was quite sparse. He discredited statements from Calcagno, Borgstrom, Hoggans, and Dr. Bower because of the relatively weak medical evidence. The new X-ray report undercuts this reason. The ALJ needs to review the report and its effect on the statements from these witnesses.

Additional evidence presented to the Appeals Council but not seen by the ALJ may be considered in determining if the ALJ's denial of benefits is supported by substantial evidence. Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000). The court may not hold on the basis of the additional evidence, however, that the claimant is entitled to an immediate award of benefits.

The case must be remanded to the ALJ for consideration of the new evidence, rebuttal by the Commissioner, and any additional testimony needed because of the new evidence. Id.

For these reasons, I am going to remand this case. The ALJ should arrange for neuropsychological testing, review the new opinion of Dr. Bower, review the lay testimony of Donna Harmon, review the new X-ray report and whether it bolstered several witness statements, including Calcagno herself, and take any other steps necessary to complete the record and reconsider his findings.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

Dated this    2nd    day of December, 2013.

    /s/ Garr M. King
    Garr M. King
    United States District Judge